## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TONI L. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-922-F |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Toni Thompson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 10, hereinafter "R.__"). The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED and REMANDED.

PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on April 7, 2009, alleging a disability onset date of February 18, 2009, and seeking benefits on the basis of heart

problems, including those involving her pacemaker; swelling and numbness on her left side; and gout. R. 139-44, 169, 173-74. Following administrative denials of her application initially and on reconsideration, Plaintiff was granted and attended a hearing before an Administrative Law Judge ("ALJ") on March 22, 2011. R. 28-73, 74-83, 86-96. The ALJ issued an unfavorable decision on March 2, 2012. R. 12-23. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-5; *see* 20 C.F.R. § 404.981. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 18, 2009, her alleged onset date. R. 14; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the following severe impairments: pacemaker secondary to congenital heart block; status post deep vein thrombosis; degenerative disc disease; degenerative joint disease; mood disorder; and personality disorder. R. 14; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14-17; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 17-22; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found

that Plaintiff had the RFC to perform light work, subject to additional nonexertional limitations:

> [Plaintiff] has the [RFC] to perform light work . . . except [Plaintiff] can perform occasional stooping. [Plaintiff] is able to understand, remember, and perform simple and some complex tasks and can relate to others on a superficial work basis. [Plaintiff] is able to adapt to a work situation.

R. 17; *see* 20 C.F.R. § 404.1567(b) (defining "light work"). Based on this RFC and the requirements of Plaintiff's past relevant work as a nursing home cook, the ALJ determined at step four that Plaintiff was unable to perform her past relevant work. R. 22; *see* 20 C.F.R. § 404.1565.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the testimony of the vocational expert ("VE") regarding the degree of erosion to Plaintiff's unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light semi-skilled occupations such as short order cook, kitchen food assembler, and pantry goods maker, all of which offer jobs that exist in significant numbers in the national economy. R. 23; *see* 20 C.F.R. § 404.1545(a)(5)(ii). The ALJ alternatively found that Plaintiff could perform unskilled sedentary occupations such as addresser, table worker, and press clippings cutter and paster. R. 23; *see* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). On those bases, the ALJ concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act, from February 18, 2009, through the date of the decision. R. 23; *see* 20 C.F.R. § 404.1520(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

On appeal before this Court, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence in determining Plaintiff's RFC and erred in his analysis of

Plaintiff's credibility. Pl.'s Br., Doc. No. 12, at 2-15. The undersigned finds these claims of error persuasive and, for the reasons set forth below, recommends that the decision of the Commissioner be reversed and remanded.

> A. *Whether the ALJ Properly Analyzed the Medical Evidence of Plaintiff's Spine and Joint Conditions and Adequately Explained that Analysis*

An ALJ may not pick and choose among uncontroverted medical evidence, taking only those items that are favorable to a finding of nondisability. *Cf. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). While "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record . . . ."). Here, although the ALJ recited much of Plaintiff's medical record in formulating the RFC, *see* R. 17-22, the decision does not reflect that the ALJ considered all of the relevant evidence regarding Plaintiff's back pain, including "uncontroverted evidence" that the ALJ chose not to rely upon and "significantly probative evidence" that he rejected.

In his RFC analysis, the ALJ noted that, "due to the development of back pain," Plaintiff sought chiropractic care from Anthony Greene, D.C.,[1] in December 2008. R. 18; *see* R. 263-66, 358-67. The ALJ observed that lumbar and thoracic x-rays were taken and described them as demonstrating "well maintained disc spaces" and being "negative

---

[1] Dr. Greene holds the degree of Doctor of Chiropractic. R. 364.

for fracture or severe dislocation." R. 18 (presumably referring to x-rays of December 18, 2008). Additionally, according to the ALJ, the x-rays showed "[m]oderate degenerative joint disease . . . with moderate disc thinning." R. 18. The ALJ's discussion of these x-rays, however, did not include that they also indicated a rightward curvature of the lumbar spine. *See* R. 18, 365-66. Further, although the ALJ states that Plaintiff was seen by Dr. Greene on December 19, 2008, the ALJ omits that Dr. Greene's notes from the referenced exam indicate that Plaintiff exhibited bilateral pain on the straight-leg raising and Hibb's tests and that Plaintiff was unable to perform any of the dorso-lumbar motion tests. *See* R. 18, 363.

Dr. Greene's findings were similar to the findings of consultative physician Roy Rindler, M.D., who examined Plaintiff on June 20, 2009. *See* R. 267-74. The ALJ's opinion summarized some of Dr. Rindler's exam notes relevant to Plaintiff's alleged lower back pain, including his findings that Plaintiff "had some point tenderness to palpitation midline in her lower back, but no evidence of muscle spasm" and that Plaintiff "ambulated with a slow gait with the frequent need for stability with the chair due to stated pain." R. 18-19. The ALJ also stated that there was "no evidence of muscle spasm" and Plaintiff's "ranges of motion were normal throughout." R. 18. The description of the evidence regarding range of motion, however, does not accurately describe Dr. Rindler's exam notes and evaluation charts. Dr. Rindler found that Plaintiff tested at 50/100 for both left and right hip flexion range of motion and that Plaintiff

exhibited pain during lumbosacral spine flexion and extension tests. *See* R. 18, 268, 270, 274.[2]

On September 28, 2009, x-rays of Plaintiff's spine (including cervical, lumbar, and thoracic views) were taken for Plaintiff's primary care physician. R. 332-34. These x-rays, like those of December 18, 2008, showed mild-moderate degenerative disc changes in the lumbar spine, which the ALJ noted. R. 18, 333. The ALJ did not note, however, that the September 28, 2009 x-rays showed facet hypertrophy in both the lower cervical and lumbar spines, as well as a rightward curvature in the lumbar spine. *See* R. 18, 332-33.

On September 22, 2010, x-rays of Plaintiff's lumbar area were taken. R. 419. The reviewing physician compared these images with the x-rays taken September 28, 2009, and concluded that the more recent x-rays showed "stable degenerative disc changes" and a rightward curvature of the lumbar spine that appeared "stable." R. 419. The report from those x-rays noted that there was "no evidence of fracture or subluxation," and that "[v]ertebral body heights and alignment are well maintained," but also noted that "[t]here are continued degenerative disc changes including spurs and facet hypertrophy." R. 419. The ALJ did not include in his opinion any discussion of this set of x-rays.

---

[2] Dr. Rindler also noted that Plaintiff "had difficulty moving from the chair to the exam table secondary to pain," which the ALJ did not mention. *See* R. 18, 268. Although the ALJ stated that Plaintiff "declined to heel or toe walk due to subjective pain and declined straight leg raise testing," he did not include Dr. Rindler's details that Plaintiff "was unable to cooperate with straight-leg raise either lying or sitting secondary to pain, i.e., straight-leg raise test is positive bilaterally." R. 19, 268.

7

The ALJ discussed a lumbar CT scan performed November 23, 2010, stating that the scan demonstrated "[f]urther multilevel degenerative changes . . . but no evidence of any spinal cord encroachment or compromise." R. 18; *see* R. 404-05. This CT scan, however, demonstrated mild central canal narrowing and moderate to severe foraminal narrowing—facts that were not noted by the ALJ. *See* R. 18, 405. The ALJ further failed to note that the CT scan also evidenced facet joint hypertrophy, retrolisthesis, vacuum phenomenon, endplate osteophystosis, sclerosis, and dextrocurvature of the lumbar spine, among other conditions. *See* R. 18, 404-05.

Some of these cited omissions might be immaterial if they had occurred in isolation. Others are material in and by themselves. Taken altogether, the ALJ's decision does not demonstrate that the ALJ adequately considered evidence of Plaintiff's compromised range of motion in her hips, foraminal narrowing, central canal narrowing, spinal curvature, facet hypertrophy, spurs, retrolisthesis, vacuum phenomenon, endplate osteophystosis, and sclerosis. This was error. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). "Because it appears that the ALJ did not consider all of the evidence, he could not properly consider [Plaintiff's] RFC," and the undersigned is unable to conclude that the ALJ's RFC is supported by substantial evidence. *See Clifton*, 79 F.3d at 1010; *Weigel v. Astrue*, 425 F. App'x 706, 709-10 (10th Cir. 2011). Remand is required so the ALJ can "consider and discuss the relevant evidence," set forth his

reasons for "accepting or rejecting evidence," and "apply correct legal standards." *See Weigel*, 425 F. App'x at 710; *Haga*, 482 F.3d at 1208.

B. *Whether the ALJ Properly Analyzed the Opinion of Chiropractor Anthony Greene*

Plaintiff argues that the ALJ failed to properly evaluate the assessment of Plaintiff's abilities provided by Dr. Greene, Plaintiff's chiropractor. Pl.'s Br. at 2-5, 8-9. Plaintiff received twelve chiropractic treatments between December 19, 2008, and April 15, 2009.[3] R. 360-61. Following those treatments, on May 14, 2009, Dr. Greene opined:

> [Plaintiff] suffers from severe lower back pain and sciatica. She has degenerative disc disease at L5-S1 and degenerative joint disease from T10-L4. I also understand she suffers from gout[4] and she wears a pacemaker. Throughout her course of treatment here, she got better, but never fully recovered and I suspect this will be a chronic condition, possibly requiring surgery in the future. I believe her to be unable to stand for long periods of time, unable to lift anything over 20 lbs. and unable to sit for longer than 45 minutes to 1 hour in duration.

R. 364. Plaintiff contends that the ALJ did not properly evaluate this letter. The undersigned agrees.

Plaintiff acknowledges that Dr. Greene is not an "acceptable" medical source and therefore cannot give a "medical opinion" within the meaning of the Commissioner's regulations. *See* Pl.'s Br. at 3-4; 20 C.F.R. § 404.1513(a)(1)-(5), (d)(1); SSR 06-3p, 2006

---

[3] Although the ALJ states that Plaintiff "was provided nineteen chiropractic sessions through April 15, 2009," R. 18, eight of the twenty scheduled sessions were either not attended by Plaintiff or were rescheduled. R. 360-61.

[4] According to Plaintiff, her chiropractor diagnosed her with gout in her back, which she felt explained the pain in her back, hip, and leg. *See* R. 37, 44, 230. The undersigned has found no evidence of such a diagnosis in the record. *See* R. 43 (testimony of medical expert "I heard her mention that she's had attacks with gout. I didn't actually see that documented anywhere in her records . . . .").

WL 2329939, at *2 (Aug. 9, 2006). "Medical opinions are statements from . . . 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (citing 20 C.F.R. § 404.1527(a)(2)). As a non-acceptable or an "other" medical source, Dr. Greene's opinion may be relied upon "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *See id.*; 20 C.F.R. § 404.1513(d). Opinions from other medical sources "are important" and "may reflect the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources'"; however, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-03p, 2009 WL 2329939, at *3, *5. Further, the ALJ's evaluation of such opinions should consider the factors set out in 20 C.F.R. § 404.1527(c), which apply equally to "all opinions from medical sources who are not 'acceptable medical sources.'" *Id.* at *4; *Frantz*, 509 F.3d at 1302.

Here, the ALJ evaluated Dr. Greene's opinion and found that it was entitled to "some, but not great weight or consideration." R. 21. Contrary to Plaintiff's argument, *see* Pl.'s Br. at 7, the ALJ did not discount Dr. Greene's opinion solely because he is a chiropractor. Rather, the ALJ discounted Dr. Greene's opinion because it was "not fully consistent with the overall medical evidence of record." R. 21. "Inconsistency with the record as a whole . . . is in general a legitimate basis on which to discount or reject a medical opinion." *Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013); *accord* 20

10

C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). But in order to discount opinion evidence because it is inconsistent with the record as a whole, there must be actual inconsistency. *Cf. Wells*, 727 F.3d at 1073 (finding that opinion evidence was not necessarily inconsistent and instructing that, upon remand, the ALJ should reevaluate limitations proposed by one doctor that he had rejected due to inconsistency with a second doctor's opinion); *Bowman*, 511 F.3d at 1275-76 (instructing that upon remand the Commissioner should reconsider a nurse's opinion that the ALJ had "assum[ed]" was inconsistent with certain medical findings but was "arguably consistent").

Here, the flaws in the ALJ's discussion of the medical evidence also tainted the ALJ's analysis of Dr. Greene's opinion. As detailed, the ALJ did not address certain medical evidence relevant to Plaintiff's spine and joint conditions. Some of the unaddressed evidence appears to be consistent with Dr. Greene's assessment. For example, in explaining his determination that Dr. Greene's opinion was inconsistent with the record, the ALJ stated, "In particular, concerning his finding of sciatica, it does not appear that Dr. Greene fully considered the findings that [Plaintiff] generally has good ranges of motion and no evidence of root compression." R. 21. However, findings are present in the medical evidence that Plaintiff did *not* have good ranges of motion in her hips (an area relevant to her complaints of lumbago and sciatica) and *has* experienced root compression. *See* discussion *supra* Part A. As a result, the ALJ's determination that Dr. Greene's opinion is inconsistent with other evidence in the record is not—on its

face—supported by substantial evidence. Therefore, the ALJ's evaluation of that opinion and the weight assigned to it were not proper and must be further considered on remand.

*C. Whether the ALJ Properly Analyzed the Credibility of Plaintiff's Subjective Complaints of Pain*

The same issue addressed above applies in the context of the ALJ's credibility analysis. The ALJ found that Plaintiff's complaints of "severe pain" do "not seem reasonable. . . from the minimal findings in evidence that. . . could be the basis for the degree of pain alleged." R. 20. Such a conclusion cannot be reached absent consideration of all the relevant medical evidence—a condition which is not clear from the ALJ's decision. Upon remand, the ALJ should reconsider Plaintiff's subjective complaints of pain in light of the entirety of the record.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by February 10, 2015. The parties are further advised that failure to timely object to this Report and Recommendation

waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 27th day of January, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE